IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

FREDRICK HAYWOOD, JR.,

Plaintiff,

Case No. ______________________
JURY DEMANDED

v.

FISK UNIVERSITY, and
JOHN DOES 1–3

Defendants.

## COMPLAINT

Plaintiff Fredrick Haywood, Jr. ("Plaintiff" or "Mr. Haywood"), by and through undersigned counsel, brings this action against Defendant Fisk University ("Fisk") and John Does 1–3 (collectively, "Defendants") for disability discrimination, failure to provide reasonable accommodation, retaliation, hostile work environment, and constructive discharge in violation of the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101, et seq., and states as follows:

## PARTIES

1. Plaintiff Fredrick Haywood, Jr. is an adult resident of Davidson County, Tennessee.
2. Plaintiff is a former employee of Fisk University.
3. Defendant Fisk University is a private university located at 1000 17th Avenue North, Nashville, Tennessee 37208.
4. At all times relevant to this Complaint, Fisk was an employer within the meaning of the ADA.
5. At all times relevant to this Complaint, Plaintiff was an employee and qualified individual within the meaning of the ADA.
6. Defendants John Does 1–3 are persons and/or entities whose true names and capacities are presently unknown to Plaintiff and who may have participated in, authorized, implemented,

or otherwise bear legal responsibility for one or more of the acts alleged herein. Plaintiff will seek leave to amend this Complaint to identify such Defendants if and when their identities and a legally viable basis for liability are established through discovery.

## JURISDICTION AND VENUE

7. Plaintiff incorporates Paragraphs 1 through 6 as though fully set forth herein.
8. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims arise under federal law, including the ADA, 42 U.S.C. § 12101, et seq.
9. This Court further possesses jurisdiction pursuant to 28 U.S.C. § 1343.
10. Plaintiff pursued administrative remedies before the United States Equal Employment Opportunity Commission ("EEOC") concerning the discriminatory employment practices alleged herein.
11. Plaintiff's administrative charge was assigned EEOC Charge No. 494-2025-00842.
12. The EEOC subsequently issued Plaintiff a Notice of Right to Sue.
13. Plaintiff acknowledges that this action was not commenced within the original 90-day period following receipt of the Notice of Right to Sue.
14. As more fully alleged below, Plaintiff was experiencing extraordinary and continuing medical circumstances during the relevant period, including serious cardiac complications, treatment, procedures, and recovery, which substantially impaired his ability to timely pursue this action.
15. Plaintiff also experienced significant financial hardship during the relevant period, which materially impaired his ability to obtain legal representation.
16. Plaintiff alleges that his delay in commencing this action resulted from extraordinary circumstances substantially beyond his control, rather than an intentional abandonment of his federal rights.

17. Therefore, Plaintiff respectfully asserts that equitable tolling is warranted and requests that this Court exercise its equitable authority to toll the 90-day filing requirement and permit this action to proceed on its merits.

18. Venue is proper in the United States District Court for the Middle District of Tennessee because Defendant is located within this District and a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in Nashville, Tennessee.

## GENERAL ALLEGATIONS

19. Plaintiff began working for Fisk University in approximately September 2022 as its Digital Marketing and Communications Manager. Plaintiff possessed substantial prior marketing experience, including experience as a Digital Marketing and Communications Manager and as a Marketing Specialist for Amazon, and later earned his MBA while employed by Fisk.

20. Plaintiff has ADHD, ADD, and dyslexia, which affect major life activities including concentrating, thinking, reading, learning, and working. Plaintiff was nevertheless qualified to perform the essential functions of his position, with or without reasonable accommodation.

21. During his employment, Plaintiff repeatedly requested a designated office or workspace as a reasonable accommodation for his ADHD, ADD, and dyslexia. Plaintiff sought a workspace that would minimize distractions, improve his ability to concentrate, and permit him to perform responsibilities requiring sustained attention, planning, and organization. Despite these requests, Fisk failed to provide the requested accommodation or meaningfully engage Plaintiff in an interactive process to identify an effective alternative.

22. Despite Fisk's failure to accommodate him, Plaintiff successfully performed his duties and generated substantial improvements in Fisk's digital and social-media performance. His responsibilities included digital marketing, social-media strategy, graphic design, branding, multimedia content, campaign development, and institutional communications.

23. Throughout his employment, Plaintiff was responsible for numerous aspects of Fisk's marketing and institutional communications, including digital marketing, social-media management, graphic design, branding, multimedia content, and campaign development. Plaintiff regularly encountered last-minute assignments, compressed deadlines, changing instructions, incomplete communications, and insufficient administrative and operational support. These conditions required Plaintiff to manage competing priorities and substantial responsibilities without adequate resources. Plaintiff repeatedly sought clearer instructions, reasonable advance notice, and more manageable project timelines, but alleges that these concerns were not adequately addressed.

24. Plaintiff also requested increased compensation commensurate with his responsibilities, performance, experience, and completion of his MBA, but did not receive the salary adjustment he sought or certain performance-related or economic bonuses discussed with him.

25. Fisk management was aware of Plaintiff's disability-related circumstances and, by at least September 2023, Plaintiff's supervisor, Maya Brown, was aware that Plaintiff was receiving psychiatric treatment and taking Adderall.

26. Plaintiff subsequently developed serious cardiac problems. On May 11, 2024, Plaintiff informed Brown that he had been rushed to the emergency room with chest pain and a heart rate of approximately 155 beats per minute and was being admitted to the hospital.

27. The following day, Plaintiff informed Brown that medical personnel had shocked his heart toward a more normal rhythm, that fluid had accumulated around his heart, and that physicians had advised him that he was experiencing congestive heart failure. Plaintiff's medical emergency and hospitalization were also known to other members of Fisk's leadership.

28. Despite its knowledge that Plaintiff remained hospitalized with a serious cardiac condition, Fisk personnel contacted Plaintiff concerning work-related matters and requested his assistance accessing work materials. Plaintiff complied with those requests while hospitalized.

29. Plaintiff continued experiencing serious cardiac problems and receiving medical treatment during the summer of 2024. While Plaintiff remained employed and undergoing medical treatment, his employer-sponsored BlueCross BlueShield health-insurance coverage became inactive effective approximately July 31, 2024.

30. Plaintiff formally submitted his resignation on August 5, 2024, effective August 16, 2024. The following day, Plaintiff contacted Fisk's Human Resources Department regarding his inactive health-insurance coverage and was advised that the termination was not a mistake. Fisk referenced an internal audit, premiums paid by Fisk, and what BlueCross had characterized as excessive prescription claims.

31. Plaintiff alleges that the loss of health-insurance coverage during his ongoing cardiac treatment disrupted his medical care, caused him to postpone outpatient treatment, and resulted in additional out-of-pocket expenses and financial hardship.

32. Plaintiff alleges that the cumulative effect of Fisk's failure to accommodate his disabilities, recurring workplace pressure, inadequate support, serious health-related circumstances, and disruption of his health-insurance coverage rendered his working conditions intolerable and left him with no reasonable alternative other than resignation. Plaintiff therefore contends that his resignation constituted a constructive discharge.

33. Following Plaintiff's departure, Fisk divided substantial responsibilities previously associated with his position among multiple positions, including a Creative Content Director and a Marketing and Communications Coordinator. Plaintiff alleges that this subsequent restructuring demonstrates the breadth of responsibilities previously assigned to him and

supports his contention that his position was inadequately staffed and supported during his employment.

34. Plaintiff thereafter filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was assigned Charge No. 494-2025-00842. The EEOC subsequently issued Plaintiff a Notice of Right to Sue.

35. Plaintiff did not commence this action within the original 90-day filing period while he continued experiencing serious cardiac complications, including arrhythmia, cardiology treatment, cardiac procedures, and a substantial recovery period. Plaintiff also experienced financial hardship that materially impaired his ability to obtain legal representation and timely pursue this action.

36. Plaintiff continued pursuing his federal rights after his medical condition sufficiently stabilized and he was able to obtain legal representation. Plaintiff therefore asserts that the extraordinary medical and financial circumstances affecting him during the relevant period warrant equitable tolling of the 90-day filing requirement.

## FIRST CAUSE OF ACTION

### (DISABILITY DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

37. Plaintiff incorporates Paragraphs 1 through 36 as though fully set forth herein.

38. Plaintiff is an individual with a disability within the meaning of the ADA.

39. Plaintiff was otherwise qualified to perform the essential functions of his position, with or without reasonable accommodation.

40. Fisk knew or had reason to know of Plaintiff's disabilities and disability-related limitations.

41. Plaintiff satisfactorily performed the essential functions of his employment despite his disabilities and Fisk's failure to provide the requested accommodation.

42. Fisk subjected Plaintiff to adverse terms, conditions, and privileges of employment because of and/or on the basis of disability.

43. The adverse treatment included, among other things, Fisk's failure to adequately address Plaintiff's disability-related needs, failure to provide adequate workplace support, and maintenance of employment conditions that foreseeably and disproportionately burdened Plaintiff in light of limitations known to Fisk.

44. The cumulative circumstances ultimately became intolerable and resulted in Plaintiff's constructive discharge.

45. Fisk's actions and omissions caused Plaintiff to suffer economic and noneconomic damages.

46. Fisk thereby violated the ADA.

## SECOND CAUSE OF ACTION

### (FAILURE TO PROVIDE REASONABLE ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

47. Plaintiff incorporates Paragraphs 1 through 46 as though fully set forth herein.

48. Plaintiff was a qualified individual with a disability within the meaning of the ADA.

49. Plaintiff informed Fisk of his need for a designated office or workspace to reduce distractions and allow him to concentrate and effectively perform his employment responsibilities.

50. Plaintiff's requested accommodation was reasonable and would not have eliminated any essential function of his position.

51. Fisk failed and/or refused to provide Plaintiff with the requested accommodation.

52. Fisk further failed to meaningfully engage Plaintiff in a good-faith interactive process to determine whether the requested accommodation or another effective accommodation could be provided.

53. Plaintiff continued to experience disability-related difficulties that the requested accommodation was intended to alleviate.

54. Fisk’s failure to reasonably accommodate Plaintiff violated the ADA and caused Plaintiff damages.

**THIRD CAUSE OF ACTION**

**(RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)**

55. Plaintiff incorporates Paragraphs 1 through 54 as though fully set forth herein.

56. Plaintiff engaged in activity protected under the Americans with Disabilities Act (“ADA”) by requesting reasonable workplace accommodations for his disabilities and advocating for appropriate consideration of his disability-related needs.

57. Fisk had knowledge of Plaintiff's disabilities, his requests for reasonable accommodation, and his serious cardiac condition, including his hospitalization and reported diagnosis of congestive heart failure.

58. On or about May 11, 2024, Plaintiff was hospitalized after experiencing a serious cardiac emergency. Despite Fisk's actual knowledge of Plaintiff's hospitalization and potentially life-threatening medical condition, members of Fisk's management continued contacting Plaintiff regarding work-related matters and requested his assistance accessing and providing materials necessary for ongoing institutional projects.

59. Specifically, while Plaintiff remained hospitalized, members of Fisk's management contacted him concerning access to presentation materials maintained in his Canva account. Plaintiff complied with these requests despite undergoing treatment for serious cardiac complications. Plaintiff alleges that these communications demonstrate Fisk's continued expectation that he address employment responsibilities even during a serious medical emergency.

60. Following Plaintiff's protected activity, his employer-sponsored BlueCross BlueShield health-insurance coverage became inactive on or about July 31, 2024, while Plaintiff remained employed by Fisk and was undergoing ongoing medical treatment for serious cardiac complications.

61. Plaintiff alleges, upon information and belief, that Fisk intentionally caused or authorized the termination of his employer-sponsored health-insurance benefits despite knowing that Plaintiff was suffering from a serious cardiac condition and depended upon those benefits to obtain necessary medical treatment.

62. Plaintiff further alleges that Fisk knew or reasonably should have known that terminating his health-insurance benefits under these circumstances would jeopardize his access to necessary medical care and subject him to substantial emotional distress, financial hardship, and additional uncertainty during a period of serious medical vulnerability.

63. Upon discovering that his health-insurance coverage had become inactive, Plaintiff contacted Fisk's Human Resources Department on or about August 6, 2024. Fisk advised Plaintiff that the termination was not a mistake and referenced an internal audit, premiums paid by Fisk, and what BlueCross BlueShield had characterized as excessive prescription claims.

64. Plaintiff alleges that the timing and circumstances surrounding the termination of his health-insurance coverage, including Fisk's knowledge of his disabilities, accommodation requests, ongoing cardiac treatment, and the explanation provided by Human Resources, support an inference that the termination may have been motivated by retaliatory considerations rather than legitimate administrative reasons.

65. Plaintiff alleges that the loss of his employer-sponsored health-insurance coverage disrupted his access to necessary medical treatment, caused postponement of outpatient medical appointments, resulted in additional out-of-pocket medical expenses, and substantially increased his emotional distress and anxiety concerning his health and financial circumstances.

66. Plaintiff further alleges that Fisk's continued requests for work-related assistance during his hospitalization, its failure to adequately address his accommodation requests, inadequate

workplace support, and the termination of his health-insurance benefits constituted a broader course of conduct that Plaintiff alleges was retaliatory and materially adverse.

67. Plaintiff alleges that the cumulative effect of Fisk's actions and omissions, including the continued expectation that he address work responsibilities during hospitalization and the loss of essential health-insurance benefits during ongoing cardiac treatment, substantially aggravated his working conditions and contributed to circumstances that he alleges became objectively intolerable.

68. Plaintiff alleges that Fisk's retaliatory conduct, considered individually and collectively, created or substantially contributed to working conditions so objectively intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign. Therefore, Plaintiff alleges that his resignation constituted a constructive discharge.

69. Plaintiff alleges that Fisk's termination of his health-insurance benefits and other materially adverse actions were undertaken because of his protected activity under the ADA, in violation of 42 U.S.C. § 12203(a).

70. As a direct and proximate result of Fisk's unlawful retaliatory conduct, Plaintiff suffered economic losses, interruption of medical benefits, additional healthcare expenses, emotional distress, mental anguish, and other damages recoverable under applicable law.

## FOURTH CAUSE OF ACTION

### (DISABILITY-BASED HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT)

71. Plaintiff incorporates Paragraphs 1 through 70 as though fully set forth herein.

72. Plaintiff is an individual with a disability protected by the ADA.

73. Plaintiff was subjected to unwelcome conduct during his employment with Fisk.

74. Plaintiff alleges that at least part of this conduct occurred because of his disabilities, his requests for reasonable accommodation, and Fisk’s response to his disability-related needs.

75. The conduct included Fisk's repeated failure to address Plaintiff's accommodation requests while continuing to subject him to recurring unnecessary urgency, exclusion from necessary communications, shifting instructions, compressed deadlines, inadequate support, and substantial workplace pressure.

76. Plaintiff alleges that the cumulative conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment.

77. Fisk knew or should have known of the circumstances and failed to take adequate corrective action.

78. Fisk's conduct ultimately contributed to working conditions that Plaintiff alleges became objectively intolerable and resulted in his constructive discharge.

79. Fisk is therefore liable for disability-based hostile work environment under the ADA.

## DAMAGES

80. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer economic and noneconomic damages.

81. Plaintiff's damages include, as applicable, lost wages, lost employment benefits, lost opportunities for advancement and increased compensation, medical and healthcare-related expenses, interruption of employer-sponsored health benefits, emotional distress, humiliation, inconvenience, mental anguish, and damage to Plaintiff's professional and economic interests.

82. Plaintiff seeks all compensatory, equitable, and statutory relief available under the ADA.

83. Plaintiff further seeks punitive damages to the extent permitted by federal law and supported by evidence that Defendant acted with malice and/or reckless indifference to Plaintiff's federally protected rights.

84. Plaintiff additionally seeks reasonable attorney's fees, litigation expenses, costs, prejudgment interest, and post-judgment interest as authorized by law.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff Fredrick Haywood, Jr. respectfully requests that this Honorable Court enter judgment in his favor and against Defendant Fisk University and award Plaintiff back pay, lost wages, and lost employment benefits; front pay in lieu of reinstatement, where appropriate; compensation for lost opportunities for advancement and increased compensation; compensatory damages for emotional distress, mental anguish, humiliation, inconvenience, and other noneconomic injuries; compensation for medical, insurance-related, and other economic losses proximately caused by Defendant's unlawful conduct; punitive damages to the extent permitted by federal law; reasonable attorney's fees, litigation expenses, and costs; prejudgment and post-judgment interest; appropriate declaratory and equitable relief; and such other, further, and general relief as this Court deems just and proper. Plaintiff further demands a trial by jury on all claims and issues so triable.

Respectfully submitted,

Justin J. Griffin

Justin J. Griffin, Esq. (TN Bar #043705)
4621 Jessica Dr.
Southaven, Mississippi 38672
Tel: (662) 812-7337
justingriffin@icloud.com
*Attorney for Petitioner*